[Civ. No. 2507.   First Appellate District, Division One.—December 31, 1918.]

## HADWEN SWAIN, Respondent, v. KLEIBER & CO., INC., Appellant.

CONTRACT—SALES ON COMMISSION—FINDINGS SUPPORTED BY EVIDENCE.. In this action on an oral contract by a salesman for the sale of automobile trucks on commission, the evidence is held sufficient to support a verdict that under the contract the plaintiff was entitled to commission on a sale brought about by him although the defendant received the order from another.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt. Judge. Affirmed.

The facts are stated in the opinion of the court.

tum Suden & tum Suden for Appellant.

Wright, Wright & Stetson for Respondent.

STURTEVANT, J., *pro tem.*—Plaintiff, an automobile salesman, sued defendant, a manufacturer of auto trucks, for commissions claimed to be due him under his contract of employment with the defendant. The cause was tried before a jury, and resulted in a verdict for the plaintiff for part of the amount demanded. A motion for a new trial made by the defendant company being denied, it appeals from the judgment, and contends in support of its appeal that the evidence is wholly insufficient to justify the verdict, and that the court erred in several particulars in its instructions to the jury.

The contract of employment was oral, and the parties are not agreed as to its precise terms. According to the defendant the contract was the ordinary one between a salesman on commission and his employer, by which the salesman is entitled to commission only upon orders obtained by him. If the jury had accepted this version of the contract its verdict would have been in favor of the defendant; and we must regard their verdict in plaintiff's favor as indicating that they accepted his version of the agreement, and held that the parties entered into a much more liberal arrangement than

the one contended for by the defendant.  The latter, we may
say in passing, although disputing its liability to the plaintiff
for the commissions sued for, appears by the record to have
treated him with great liberality, and its present predicament
appears to have arisen from entering into a somewhat unusual
contract which, resting in parol, was susceptible of almost
unconscious variation as to its terms.

The plaintiff testified to his negotiations and the arrange-
ment entered into between himself and the defendant through
its president, Mr. Paul Kleiber, as follows: ''I told Mr.
Kleiber.that I did not care for a salary . . . but that I did
want the five per cent commission that is usually paid for
selling trucks, and I had had an experience in Los Angeles
in which I had induced a man to mortgage his property to
buy a truck, and the last minute the garage man takes
hold of it and gets all of the commission, and that I would
not enter their employment unless this point was made clear.
. . . I told him I had been selling to the large companies
down there [Los Angeles], including the oil companies and
the lumber companies and other big companies—the gas
companies; I knew the procedure of their methods of buy-
ing, which are very different from an ordinary corpora-
tion.   These big companies have a board, some of them five
to seven members, that had the handling of this purchas-
ing business . . . that it is a long siege to get these things
through these officers; that I wanted to pay off the $4500
mortgage that I had on my property; that I could not
get it unless I played for a stake, and that the oil companies
would take some time.  His answer to me about that was,
'We are too small to deal with those big oil companies.'  I
said, 'I think I can work it up because I know them personally,
the people who have the placing of the order in these com-
panies.'  'Well,' he said, 'all right.  Go ahead and follow it
up.'  And I said, 'When they send in an order they very
rarely hand that order to the salesman, the agent that goes in,
but it comes in in various odd ways outside,' and I told him
I would not follow it up unless I got my commission no matter
how it came in or whether it came in later.  Furthermore, it
was useless to spend a year or two chasing these people if I
was not going to get the repeat orders, take all of that time. . . .
He said that if I followed the business up that I should have
that five per cent commission  no matter how long it took

before the order came in or how it came in; that they were not able to get the business. . . . He told me that he would give me the repeat orders.''

Working under his arrangement with the defendant, whatever it was, the plaintiff approached the Schell Oil Company through certain of its officers, and endeavored to interest that company in the product of the defendant. He called on the officers of the company many times, and induced one of them, Mr. Noble, the purchasing agent, to visit the factory of the defendant and witness the process of manufacture. Finally Mr. Noble informed plaintiff that his company was going to give an order for a Kleiber truck, and the plaintiff conveyed this information to Mr. Kleiber. Shortly thereafter the Schell Company ordered two Kleiber trucks, but did not send the order directly to the defendant company, whose factory and place of business was in San Francisco, but handed it to a concern by name Osen & Hunter, dealers in automobiles and trucks in Oakland, who had a contract with the defendant by which they were granted exclusive selling rights to the defendant's product in the county of Alameda. Mr. Noble testified that the plaintiff was the first person who called his attention to the Kleiber truck, and that he had recommended its purchase to the higher officers of the company. As to the reason for placing the order with Osen & Hunter, he testified that the policy of his company was always to place such an order where the truck was to be used; that in this case they were to be used in Oakland; and further, that Osen & Hunter were large customers of the company, under all of which circumstances it was out of the question to give the order to the plaintiff.

The contract between the defendant and Osen & Hunter was not one which constituted them agents in a legal sense. They were independent dealers; and in consideration of certain advantages conferred upon the defendant, and an agreement to purchase at least fifteen trucks per annum from the defendant, they were granted the exclusive right of selling the defendant's products in certain territory, including Oakland. It was not the practice of this concern, nor were they required to do so in their contract with the defendant, to have in stock any Kleiber trucks beyond what is known in the trade as a demonstrator, but on receiving an order for one they would send an order for it to the defendant. This they did in the

present case; and the defendant after the receipt of the first order assembled the truck and delivered it directly to the Schell Oil Company. During the course of its completion some correspondence passed between the defendant and the Schell Company relative to certain details to be incorporated into the truck, and, as far as they knew, Osen & Hunter were simply agents of the defendant.

Under these circumstances the question that arises (and it is practically the sole question involved in the case) is, Is an order received by the defendant in the way and under the circumstances described one coming within the terms of the defendant's contract with the plaintiff as testified to by him?

We are of the opinion that the terms of the contract are so broad and elastic that this question must be answered in the affirmative; and that although as a matter of law the order received by the defendant was an order from Osen & Hunter, and not from the Schell Oil Company, yet it was, under the evidence accepted by the jury, given to the defendant as the result of the plaintiff's efforts.

This construction is reinforced to some extent by what we may regard as the practical construction by the defendant itself of the contract; for, although refusing to pay the specific commission demanded by plaintiff upon the sale of the trucks to the Schell Oil Company, placed that refusal upon the ground that it could not pay two commissions upon the same sale, and promised to make the amount good to the plaintiff in some other way.

The amount awarded by the jury to the plaintiff represented commissions on six automobile trucks—four sold to the Schell Oil Company in the manner above described, and two to the Western Meat Company. If we are correct in our conclusion as to the validity of the plaintiff's claim as to the order for this first Schell truck, then the award of the jury must stand as to the remaining five, for the evidence shows them to be sales made by the defendant within the provisions of the contract as thus construed.

Appellant assigns as error certain modifications made by the trial court to instructions which appellant desired to have presented to the jury.

The court instructed the jury in general terms as to the defendant's rights under the theory of the case pursued by it in the presentation of its defense; but refused to go further

by concretely applying the principles enunciated to particular phases of the case. While the instructions as offered might well have been given, yet the law applicable to the facts as contended for by the defendant was, we think, sufficiently stated to the jury, although in general terms; at least we hardly think error can be predicated upon the refusal of the court to amplify the instructions.

One instruction, also criticised by the defendant, told the jury in effect that the plaintiff could recover if the order from the Schell Company to Osen & Hunter was brought about by the plaintiff. This instruction could not be defended if the only evidence of the contract between plaintiff and defendant was that offered by the defendant; but, as we have seen, the plaintiff testified to a widely different state of facts, which the jury had the right to accept as true. As applied to that phase of the evidence we see nothing incorrect in this instruction.

For the reasons hereinbefore given the judgment is affirmed.

Lennon, P. J., and Beasly, J., *pro tem.*, concurred.